UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CRAIG JUNGERS, *et al.*,

    Plaintiffs,

v.

BENTON RURAL ELECTRIC ASSOC., *et al.*,

    Defendants.

NO. CV-07-208-RHW

**ORDER GRANTING MOTION TO DISMISS**

Before the Court are Defendants' Benton Rural Electric Association ("Benton REA"), PowerTelNet, Dawsey, & Bradshaw's Joint Motion for Summary Dismissal (Ct. Rec. 12); Defendant Hutchison's Memorandum of Authority in Support of Motion for Order of Dismissal, construed as a motion to join (Ct. Rec. 58); Defendant Godard's Motion for Order of Dismissal (Ct. Rec. 35); Defendant Williams' Memorandum of Authority in Support of Motion for Order of Dismissal, construed as a motion to join (Ct. Rec. 57); Plaintiffs' Motion to Strike Defendants Benton REA, Powertelnet, Inc., Charles L. Dawsey, and Michael J. Bradshaw's Motion for Summary Dismissal (Ct. Rec. 25); and Plaintiffs' Motion for Leave to File Second Amended Complaint (Ct. Rec. 38). A hearing was held on March 3, 2008. John McKean appeared on behalf of Plaintiffs. Gregory McElroy appeared on behalf of Defendants Benton REA, PowerTelNet, Dawsey, and Bradshaw; Michael Tabler appeared on behalf of Defendant Don Godard; and Donald Mullins appeared on behalf of Defendant Harry Williams.

///

**I.    Background**

**ORDER GRANTING MOTION TO DISMISS** \* 1

Plaintiffs filed their Complaint alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, along with various state law violations on June 29, 2007. Plaintiffs are internet service providers in Grant County, Washington. They allege lost market share and lost profits caused by two contracts in 2001 between Public Utility District No. 2 of Grant County, Washington ("Grant County PUD"), formerly a named Defendant in this matter, and Benton REA. The contracts supported the development of a fiber optic network in Grant County to transmit internet, telephone, and video. Plaintiffs allege that Defendants violated Washington State law by entering into contracts to provide telecommunications to end users, and that Grant County PUD's subsidy of the provision of services resulted in artificially low prices for internet services. Plaintiffs allege they were forced to offer their services at the same low prices to remain competitive, and they suffered economic harms from doing so.

Plaintiffs allege criminal conduct in the form of wire fraud and mail fraud against Defendants under the civil enforcement provision of the RICO. 18 U.S.C. §§ 1962 & 1964. The allegedly fraudulent communications that form the basis of the predicate acts for civil RICO, wire and mail fraud, were between and among Defendants and Grant County PUD.

## II.   Motions for Summary Dismissal

Defendants move the Court pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for an order granting summary dismissal on each of the RICO causes of action, along with any supplemental state law claims. Rule 12(b)(6) permits dismissal when the complaint fails to state a claim for which relief may be granted. Rule 9(b) requires pleading with particularity when a complaint alleges circumstances constituting fraud or mistake. Defendants ask the Court to dismiss the RICO claims against them because the Complaint fails to state a cause of action under 12(b)(6) and because Plaintiffs fail to allege predicate acts (mail fraud and wire fraud) with the particularity required by Rule 9(b). Defendants also allege

**ORDER GRANTING MOTION TO DISMISS** * 2

that Plaintiffs failed to file their RICO statement as required under the Local Rules. Plaintiffs filed their statement subsequent to the filing of Defendants' motion (Ct. Rec. 28).

### A.    Standard of Review

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The 12(b)(6) standard has recently been re-stated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, an anti-trust case. The Court discarded the standard for 12(b)(6) motions established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ("that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), finding that the "phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1967-69 (2007). In *Bell Atlantic*, the Supreme Court was concerned that *Conley*'s standard could lead to unnecessary and expensive pretrial discovery just to demonstrate the groundlessness of the plaintiff's case in complex anti-trust litigation. *Id.* "*Conley* . . . described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 1969. The Court clarified the standard and held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. The factual allegations must be enough to raise a right to relief above the speculative level. *Id.* at 1965. All material allegations in a complaint must be taken as true and viewed in the light most favorable to the plaintiff. *Geraci v. Homestreet Bank,*

**ORDER GRANTING MOTION TO DISMISS** * 3

347 F.3d 749, 751 (9th Cir. 2003). Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Navarro*, 250 F.3d at 732. The Court, in reviewing a Rule 12(b)(6) motion, must consider only the facts alleged in the pleadings, documents attached as exhibits, and matters of judicial notice. *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

### B.     Analysis

Defendants list quite a few issues with Plaintiffs' Complaint that they allege fall below the particularity requirements of Rule 9(b) and fail to state a claim upon which relief may be granted under Rule 12(b)(6). Defendants state that the only predicate acts of criminal racketeering alleged are federal mail fraud and federal wire fraud, but that Plaintiffs do not plead with particularity any dates, places, times, senders, or intended recipients of allegedly fraudulent communications made by mail or wire. Plaintiffs also fail to plead any damages caused to them both directly and proximately by the alleged predicate acts of mail and wire fraud, or that they were recipients of any alleged false and fraudulent communications transmitted by wire or mail. Defendant's other main assertion is that Plaintiffs have not pled that any of the alleged predicate acts occurred within the four year statute of limitations for a RICO cause of action.

Defendants rely in large part on the recent Supreme Court case *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 126 S.Ct. 1991 (2006), to argue that Plaintiffs' RICO claim must fail because, even if true, Defendants' alleged acts were not the proximate cause of their harms. The RICO Act prohibits certain conduct involving a "pattern of racketeering activity," and makes a private right of action available to "[a]ny person injured in his business or property by reason of a violation" of RICO's substantive restrictions, provided that the alleged violation was the proximate cause of the injury. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). The causation element of a civil RICO claim arises in 18

**ORDER GRANTING MOTION TO DISMISS** * 4

U.S.C. § 1964(c).[1]

In *Anza*, a corporate plaintiff brought an action against a business competitor for engaging in an unlawful racketeering scheme aimed at gaining sales and market share at its expense. 547 U.S. at —, 126 S.Ct. at 1994. The plaintiff alleged that the defendant's racketeering activity included failing to charge New York sales taxes and fraudulently concealing that practice from the state by mailing and electronically sending false tax returns. *Id.* The plaintiff asserted this practice allowed the defendant to reduce its prices and attract more customers without adversely affecting its profit margin. *Id.* The plaintiff stated that this led to its loss of "significant business and market share." *Id.* at 1995. Because the failure to collect New York sales taxes is not a predicate act under RICO, the plaintiff raised

---

[1] Section 1964(c) states that "[a]ny person injured in his business or property *by reason of a violation of section 1962* . . . may sue therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]" 18 U.S.C. § 1964(c) (emphasis added). Plaintiffs seek relief under four subsections of the RICO Act, 18 U.S.C. § 1962(a), (b), (c), and (d). "18 U.S.C. § 1962(a) prohibits a person who receives income derived from a pattern of racketeering activity from using or investing such income in an enterprise engaged in interstate commerce." *Sybersound Records, Inc. v. UAV Corp.*, — F.3d —, 2008 WL 509245, at *7 (9th Cir. Feb. 27, 2008). Under § 1962(b), it is unlawful for a person through a pattern of racketeering activity to acquire or maintain interest or control of an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(b). Section 1962(c) "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity." *Sybersound*, 2008 WL 509245, at *7. Lastly, § 1962(d) renders unlawful the conspiracy to commit any of the three preceding provisions. 18 U.S.C. § 1962(d).

**ORDER GRANTING MOTION TO DISMISS** * 5

mail and wire fraud as the predicate acts. *Id.* The case came to the Supreme Court after the district court granted the defendant's motion to dismiss under Rules 12(b)(6) and 9(b). *Id.* at 1994.

The Supreme Court upheld the district court's dismissal of the RICO claims. The Court noted that "the compensable injury flowing from a violation of [§ 1962(c)] 'necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.'" *Id.* at 1996 (citation omitted). The Court found that the cause of the harms suffered by the plaintiff in *Anza* was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)[,]" and that there was clearly an "absence of proximate causation. . . ." *Id.* at 1997. In other words, the true victim of the defendant's predicate acts was the State of New York—not the plaintiff—because the party actually being defrauded was the State. *Id.* The plaintiff's harms were too attenuated to be the basis of a RICO claim. *Id.*

The Supreme Court further discussed the underlying premises behind proximate causation, explaining that civil RICO plaintiffs must show that the alleged fraud itself directly harmed them, lest damages become too difficult to ascertain. *Id.* The Court explained that a party's lost sales could result from factors other than an alleged wrongdoer's acts of fraud. *Id.* "Businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices." *Id.* Here, as in *Anza*, Plaintiffs blame their alleged harms—loss of customers and income—on Defendants' lowering of prices. They claim the lower prices were made possible by Defendants' allegedly illegal agreement, but this is a step too far from Plaintiffs' alleged injuries. There is no direct link between the alleged mail and wire fraud allegedly committed by Defendants and Plaintiffs' losses.

**ORDER GRANTING MOTION TO DISMISS** \* 6

The Supreme Court hit on another compelling similarity between *Anza* and the case at hand when it stated that the "requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims." *Id.* at 1998. Here, Grant County PUD, allegedly induced by mail or wire fraud into signing an illegal, *ultra vires* contract by and with Defendants and induced to pay allegedly fraudulent invoices transmitted by mail or wire, may pursue its own remedies against Defendants.[2]

Also in *Anza*, the Supreme Court expressed concern over claims between economic competitors, such as the parties in this case, for, "if left unchecked, [claims brought by economic competitors] could blur the line between RICO and the antitrust laws." *Id.* In sum, the Supreme Court held that

> [a] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense. When a court evaluates a RICO claim for proximate causation, the central question it must ask is *whether the alleged violation led directly to the plaintiff's injuries*.

*Id.* (emphasis added).[3]

---

[2] In fact, it appears from some of the filings in this case that Grant County PUD has in fact pursued some remedies against some of the named Defendants in this matter. *See* Ct. Rec. 66 (a brief from Grant County PUD from *Public Utility Dist. No. 2 of Grant County v. Donald Godard* et al., Case Number 05-2-00691-5 out of Grant County Superior Court).

[3] The Supreme Court's discussion of proximate causation was focused on the *Anza* plaintiff's claim under § 1962(c). The Court declined to discuss the plaintiff's claims under § 1962(a) because they had not been addressed by the Court of Appeals or by the parties. The Court explained that "private actions for violations of § 1962(a), like actions for violations of § 1962(c), must be asserted under § 1964(c)[,]" and that "a claim is cognizable under § 1964(c) only if the

**ORDER GRANTING MOTION TO DISMISS** * 7

Accordingly, the Court turns to the question of whether the alleged violations of § 1962 led directly to Plaintiffs' injuries, which are loss of market share and economic harms from lowering prices. The alleged violations are that Defendants engaged in mail and wire fraud by signing a contract that was illegal under Washington law and by billing Grant County PUD under that contract for services. This billing subsidized Defendants' internet business to the extent that Defendants were able to provide their services for costs well below the going market rate. Plaintiffs therefore allege (1) the investment of funds earned through mail and wire fraud harmed them under § 1962(a); (2) the acquisition of control of an enterprise through mail and wire fraud harmed them under § 1962(b); (3) the conduct of the enterprise through mail and wire fraud harmed them under § 1962(c); and (4) Defendants conspired to commit all of these harms. Plaintiffs allege the price cutting resulting from the investment, control, and conduct of their competitor led them to lower the price of their services in response, which resulted in their loss of income and of market share.

In *Sybersound Records v. UAV Corp.*, 2008 WL 509245 (9th Cir. Feb. 27, 2008), the Ninth Circuit upheld the dismissal of a plaintiff's RICO claims under § 1962(a) and (c). The Ninth Circuit applied *Anza*'s logic and holding to a case where an economic competitor alleged RICO violations based on predicate acts of mail and wire fraud and copyright infringement against entities other than itself. *Id.* at *7. The court touched on the fact that a business's lost sales may be

---

defendant's alleged violation proximately caused the plaintiff's injury." *Id.* at 1999. However, the Court found that the "proximate cause inquiry . . . requires careful consideration of the 'relation between the injury asserted and the injurious conduct alleged.' Because § 1962(c) and § 1962(a) set forth distinct prohibitions, it is at least debatable whether Ideal's two claims should be analyzed in an identical fashion for proximate-cause purposes." *Id.* (internal citation omitted). Here, Plaintiffs assert claims under all four subsections of § 1962.

**ORDER GRANTING MOTION TO DISMISS** * 8

attributable to many different reasons; and that a court would need to engage in a speculative and complicated analysis to determine what percentage of sales were attributable to the defendants' decision to lower their prices or a customer's preference, instead of to the alleged predicate acts. *Id.* at *8-*9. The court concluded that the plaintiff did not have standing to assert a RICO violation under § 1962(a) or (c) because the alleged fraudulent acts did not proximately cause the plaintiff's injuries. *Id.* at *9. As in *Sybersound*, Plaintiffs' harms here are too attenuated from the alleged wire and mail fraud to give them standing under the civil RICO act.

The Ninth Circuit directly addressed a claim under § 1962(a), which requires the allegation of an investment injury separate and distinct from the injury flowing from the predicate acts. *Id.* at *9. "[A] plaintiff seeking civil damages for a violation of § 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income." *Nugget Hydroelectric L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 437 (9th Cir. 1992). Plaintiffs here therefore must allege that the investment of racketeering income was the proximate cause of their injuries. "Reinvestment of proceeds from alleged racketeering activity back into the enterprise to continue its racketeering activity is insufficient to show proximate causation." *Sybersound*, 2008 WL 509245, at *9 (citations omitted).

Here, Plaintiffs argue they are the direct victim of the fraudulent use of Grant County PUD's funds to subsidize their competitor, PowerTelNet. As in *Sybersound*, the purported fraud committed by Defendants through the Grant County PUD-Benton REA contract, and not the income from the sale of internet services, allegedly allowed Defendants to undercut Plaintiffs' prices. *See id.* at *10. Plaintiffs' competitive injury stems from Defendants' alleged violation of Washington law, for which they do not have statutory standing to bring a RICO claim, so their claim under § 1962(a) fails. *See id.*

**ORDER GRANTING MOTION TO DISMISS** * 9

1 Likewise, Plaintiffs' claim under § 1962(b) does not sufficiently allege
2 proximate cause. Under § 1962(b), the plaintiff must allege an injury directly and
3 proximately caused by the defendant's control over a RICO enterprise. *See Wagh*
4 *v. Metris Direct, Inc.*, 348 F.3d 1102, 1111 (9th Cir. 2003), *overruled on other*
5 *grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc). This
6 means Plaintiffs must allege facts sufficient to assert standing *and* "a specific
7 nexus between the control of the enterprise and the racketeering activity." *Id.*
8 (quotation marks and citation omitted). As with their claims under § 1962(a),
9 Plaintiffs have failed to allege a separate and distinct injury from the injuries
10 incurred from the predicate acts performed during the conduct of the enterprise.
11 *See Sybersound*, 2008 WL 509245, at *9. Plaintiffs' lack of standing to bring their
12 civil RICO claims due to the absence of proximate cause between the alleged
13 predicate acts and their competitive injuries therefore dooms their claim under §
14 1962(b) as well.[4]

15 Because the Court finds that Plaintiffs cannot show Defendants' alleged
16 racketeering activities directly and proximately caused their alleged injuries, the
17 Court does not reach the parties' arguments regarding particularity and the RICO
18 statute of limitations.[5]

19 **III. Plaintiffs' Motion to Strike**

20 Plaintiffs move the Court to strike Defendants' Motion for Summary
21 Dismissal. Plaintiffs submit that jurisdiction had not yet been established over the
22 Benton REA Defendants at the time they filed their motion because those
23 Defendants had served their waivers of service on Plaintiffs via the CM/ECF
24 system and concluded that such service constituted the actual filing of waivers of

---

[4] The same analysis applies to Plaintiffs' RICO conspiracy charge under § 1962(d).

[5] The Court also declines to reach the arguments presented by Defendants Godard and Hutchison as it is unnecessary to do so.

**ORDER GRANTING MOTION TO DISMISS** * 10

service with the Court. Plaintiffs maintain that the authority to file waivers of service with the Court is exclusive to Plaintiffs under the Federal Rules of Civil Procedure, so Defendants' motion for summary dismissal must be denied.

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for serving the summons and complaint within the time allowed and must furnish the necessary copies to the person who makes service. Fed. R. Civ. P. 4(c)(1). Rule 4(d)(4) outlines the results of filing a waiver of service: "When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4).

Plaintiffs submit that the only ways to establish jurisdiction over a defendant in federal court are through formal service or through the formal receipt by the plaintiff of a waiver of service and the subsequent filing of the service by the plaintiff. Plaintiffs do admit that they received Defendants' waivers through CM/ECF, but they assert that a defendant cannot "usurp" the right to control the initial pace of the litigation by serving the waiver through the electronic filing system.

Comment 4-18 of Rule 4 explains that the "duty imposed on a defendant who receives a waiver request is 'to avoid unnecessary costs of serving the summons.'" Fed. R. Civ. P. 4, comment C4-18. The comment goes on to state that "the burden under Rule 4(d)(4) is clearly on the plaintiff to effect the waiver's filing." *Id.* However, the Ninth Circuit has construed Rule 4 liberally and describes "the service requirements of Rule 4 as 'a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint[.]'" *S.E.C. v. Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) (citing *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988)). With that in mind, Defendants' waivers were sufficient to confer this Court's jurisdiction over them, and their motion for summary dismissal is properly

**ORDER GRANTING MOTION TO DISMISS** * 11

before the Court.

**IV.    Plaintiffs' Motion to Amend**

Plaintiffs ask the Court for leave to amend their Complaint. They assert that this case is still in the pleading stage, and that Defendants will not be prejudiced by permitting amendment at this time.

After responsive pleadings are served, a party may only amend its complaint after obtaining leave of the Court or consent from the adverse party. Fed. R. Civ. P. 15(a). Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend a pleading freely "when justice so requires." *Id.*; *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*). "The Supreme Court has stated that 'this mandate is to be heeded[;]'" *Lopez*, 203 F.3d at 1130 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); and the Ninth Circuit has explained that this policy "is to be applied with extreme liberality." *Eminence Capitol, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The Supreme Court offered the following factors to consider when determining whether to grant leave to amend a complaint:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman*, 371 U.S. at 182. The factor of prejudice to the opposing party carries the greatest weight. *Eminence Capitol*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original).

The Second Amended Complaint is 58 pages long and spells out in detail the emails and other communications that allegedly occurred between and among Defendants and others regarding the eventual agreement between Grant County PUD and Benton REA Defendants to offer internet services to end users. Notably, the Second Amended Complaint explicitly states that the predicate acts

**ORDER GRANTING MOTION TO DISMISS** * 12

Defendants, as an enterprise, committed were to devise a scheme

> (i) to defraud *the PUD* of funds; (ii) to obtain money or property *from the PUD* for an illegal purpose by means of false or fraudulent pretenses, representations or promises, and/or (iii) to illegally transfer funds *from the PUD* to Benton REA and PTN for the purpose of funding the providing of telecommunications in a manner not authorized by RCW 54.16.330, by means of false or fraudulent pretenses, representations or promises. . . .

(Ct Rec. 41, 2d Am. Cmplt., ¶ 4.3) (emphasis added).

Plaintiffs' proposed Second Amended Complaint does not cure the defects of their First Amended Complaint, detailed above, and both fail to state a claim for which relief may be granted. The Second Amended Complaint in fact makes more obvious that Grant County PUD was the direct victim of the alleged predicate acts, not Plaintiffs. Therefore, amendment would be futile and leave to amend is not granted.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Benton Rural Electric Association ("Benton REA"), PowerTelNet, Dawsey, & Bradshaw's Joint Motion for Summary Dismissal (Ct. Rec. 12); Defendant Hutchison's Memorandum of Authority in Support of Motion for Order of Dismissal, construed as a motion to join (Ct. Rec. 58); Defendant Godard's Motion for Order of Dismissal (Ct. Rec. 35); and Defendant Williams' Memorandum of Authority in Support of Motion for Order of Dismissal, construed as a motion to join (Ct. Rec. 57) are **GRANTED**.

2. Plaintiffs' Motion to Strike Defendants Benton REA, Powertelnet, Inc., Charles L. Dawsey, and Michael J. Bradshaw's Motion for Summary Dismissal (Ct. Rec. 25) is **DENIED**.

3. Plaintiffs' Motion for Leave to File Second Amended Complaint (Ct. Rec. 38) is **DENIED**.

4. The above-captioned matter is **DISMISSED** with prejudice.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and to **close the file**.

**ORDER GRANTING MOTION TO DISMISS** * 13

1 | **DATED** this 25th day of March, 2008.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2007\Jungers\dismiss.ord.wpd

**ORDER GRANTING MOTION TO DISMISS** * 14